IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-258

 No. COA21-402

 Filed 19 April 2022

 Wake County, No. 21 SPC 0287

 IN THE MATTER OF: A.J.D, Jr.

 Appeal by Respondent from Order entered 17 February 2021 by Judge Anna

 E. Worley in Wake County District Court. Heard in the Court of Appeals 8 February

 2022.

 Attorney General Joshua H. Stein, by Assistant Attorney General Milind K.
 Dongre, for the State

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C.
 Katz, for respondent-appellant

 HAMPSON, Judge.

 Factual and Procedural Background

¶1 Respondent-Appellant A.D. (Respondent) appeals from an Involuntary

 Commitment Order entered in Wake County District Court declaring Respondent

 mentally ill, a danger to self, and ordering Respondent be committed to an inpatient

 facility for forty-five days. The Record reflects the following:

¶2 On 26 January 2021, Edward Cashwell, a nurse at Wake County Detention

 Center, signed an Affidavit and Petition for Involuntary Commitment in Wake

 County District Court alleging Respondent was mentally ill and a danger to himself
 IN RE A.D.

 2022-NCCOA-258

 Opinion of the Court

 or others or in “need of treatment in order to prevent further disability or

 deterioration that would predictably result in dangerousness.” The same day, a

 magistrate issued a form Findings and Custody Order finding reasonable grounds to

 believe Respondent was mentally ill and a danger to himself or others, and ordering

 Respondent to be taken into custody within twenty-four hours for examination by a

 person authorized by law to conduct the examination.

¶3 The next day Respondent was taken into custody and examined by Adelmar

 Winner (Winner), a licensed clinical social worker at UNC WakeBrook. Upon

 examination, Winner submitted a First Examination for Involuntary Commitment

 report. In this report, Winner stated Respondent has “a history of Schizoaffective

 Disorder and Autism” and “had an accident due to walking the middle of traffic while

 actively psychotic.” Winner continued stating:

 Patient has long history of non compliance with medication and
 going from state to state, running away from the ‘people who
 implanted a microchip in his head.’ . . . He endorses paranoia in
 references to his parents ‘stealing millions of dollars from him’
 and endorses several delusions including that he is ‘a valuable
 witness of federal case.’

¶4 On 29 January 2021, Respondent underwent a second evaluation, conducted

 by Winner, at UNC WakeBrook. Winner’s report stated:

 [Respondent] has a history of autism and schizoaffective disorder,
 recently missing for 10 years and came to Raleigh to see daughter
 (which he never did). [Respondent] is . . . psychotic, believes there
 is a federal conspiracy against him and he does not believe his
 IN RE A.D.

 2022-NCCOA-258

 Opinion of the Court

 parents are his guardians. He believes he is an attorney with the
 supreme court.

 Winner also opined Respondent met the criteria for commitment because Respondent

 is “an individual with a mental illness” and is “dangerous to self or others.”

¶5 On 11 February 2021, after a continuance, the trial court heard Respondent’s

 case pursuant to N.C. Gen. Stat. § 122C-268. In support of the Petition, the State

 called Dr. Michael Zarzar to testify. Dr. Zarzar testified Respondent has a history of

 schizophrenia with significant periods of delusions in the past. Respondent initially

 presented to their crisis assessment service (CAS) on petition by the Wake County

 Detention Center (Center). Dr. Zarzar explained after Respondent arrived at the

 Center, a jailhouse nurse became concerned about his mental status after he made a

 statement about suicide, and noticed he was exhibiting symptoms of paranoia and

 delusions. Dr. Zarzar further testified:

 During the initial assessment with the clinicians in CAS,
 [Respondent] had voiced that he was running away from people
 who were implanting chips in his head and trying to get away
 from them. He also said that his family, his parents were stealing
 millions of dollars from him. He said that he was an attorney,
 and he said that he had evidence that was significant for a federal
 case and that he was supposed to be testifying.

 Dr. Zarzar believed Respondent’s delusions were driving his behavior and putting

 Respondent in positions of danger. For example, Dr. Zarzar explained Respondent

 had a history of walking down the middle of the road and had actually been hit by a
 IN RE A.D.

 2022-NCCOA-258

 Opinion of the Court

 car a couple days before he was taken to the Center. Respondent also had paranoia

 around his identification and would “erase his name if it was on any whiteboard and

 insist his name not be on the door.”

¶6 Moreover, Dr. Zarzar testified when Respondent presented to CAS, he refused

 to take any medications, and clinicians had discovered him “cheeking” his

 medications or hiding it in his mouth to avoid swallowing it. Thereafter, the

 clinicians had to crush the medication and put it in liquid to administer the

 medication. Dr. Zarzar also testified after being on medications for a while,

 Respondent continued to have paranoia about his identification. For example:

 He talks about being certified by the U.S. Treasury, and when you
 ask him what being certified by the U.S. Treasury means, he’s
 said surrendering his identity to the U.S. Treasury. And that was
 as recently as today.

¶7 Ultimately, Dr. Zarzar testified that in his opinion: “Respondent is suffering

 from schizophrenia, and I believe that he’s in an acute episode of the schizophrenia.”

 However, Dr. Zarzar explained Respondent doesn’t view himself as having any illness

 and denies being in psychiatric treatment so “with this continued paranoia that he

 still acts upon that still drives his decisions and his history of putting himself in

 dangerous situations . . . I’m very worried that he would represent a danger to

 himself.” Dr. Zarzar also explained they were still in the process of adjusting

 Respondent’s medications to help with the delusions, and he wanted to keep
 IN RE A.D.

 2022-NCCOA-258

 Opinion of the Court

 Respondent for at least 45 to 90 days but would consider discharging him earlier if

 his delusions began to resolve.

¶8 After Dr. Zarzar testified, Respondent took the stand. Respondent denied

 having been previously diagnosed with schizophrenia and denied being previously

 hospitalized with schizophrenia despite Dr. Zarzar’s testimony to the contrary.

 Nevertheless, Respondent testified he had somewhere to live and did not have any

 problems with taking medication.

¶9 After Respondent testified, the trial court entered a written Order concluding

 Respondent “has a mental illness, he’s a danger himself, and he’s to be committed to

 a period not to exceed 45 days.” The trial court also found by clear, cogent, and

 convincing evidence, the following relevant facts supporting the ultimate Finding of

 dangerousness to self:

 3. . . . in the days preceding his admission, the Respondent had
 received medical treatment for injuries he sustained after being
 struck by a vehicle while on foot.

 4. . . . Respondent has a history of failing to properly take
 psychiatric medications and of putting himself in dangerous
 positions, including a 2010 incident in which he was reported to
 have walked in the road.

 5. Respondent denied any past mental illness diagnoses or
 psychiatric hospitalizations. Dr. Zarzar testified that the
 Respondent has no insight into his mental illness.

 6. Dr. Zarzar testified that while the Respondent has been under
 his care, he has observed symptoms of schizophrenia . . .
 IN RE A.D.

 2022-NCCOA-258

 Opinion of the Court

 8. The Court finds that the above-described and uncontroverted
 testimony about the 2010 incident comprises applicable evidence
 of a previous episode of dangerousness to self which the Court
 should consider in determining reasonable probability of physical
 debilitation.

 12. The Court finds that all the foregoing testimony demonstrates
 grossly irrational behavior and grossly inappropriate behavior to
 the situation by Respondent; actions Respondent was unable to
 control; and behavior evidencing severely impaired insight and
 judgment by Respondent.

 14. The court finds . . . a reasonable probability that absent up to
 forty-five additional days of inpatient treatment given pursuant
 to Chapter 122C, (a) the Respondent will be unable either to
 exercise self-control, judgment, and discretion in the conduct of
 his daily responsibilities and social relation, or to satisfy his need
 for nourishment, personal, and medical care, shelter, and self-
 protection and safety; and (b) there’s a reasonable probability of
 serious physical debilitation of Respondent within the near
 future.

¶ 10 Respondent filed Notice of Appeal from the trial court’s Order on 24 February

 2021.

 Appellate Jurisdiction

¶ 11 Respondents in involuntary commitment actions have a statutory right to

 appeal a trial court’s order. N.C. Gen. Stat. § 122C-272 (2021) (“Judgment of the

 district court [in involuntary commitment cases] is final. Appeal may be had to the

 Court of Appeals by the State or by any party on the record as in civil cases.”). Rule

 3 of our Rules of Appellate Procedure requires a party to file written notice of appeal
 IN RE A.D.

 2022-NCCOA-258

 Opinion of the Court

 thirty days after the entry of an order of a superior or district court rendered in a civil

 action or special proceeding. N.C.R. App. P. 3(a), (c) (2021).

¶ 12 In this case, Respondent filed written notice of appeal on 24 February 2021,

 within the thirty-day period following entry of the Order on 17 February 2021.

 Furthermore, although the commitment period has expired, the appeal is not moot

 because the challenged order may have collateral legal consequence. See In re Moore,

 234 N.C. App. 37, 41, 758 S.E.2d 33, 36 (2014) (“The possibility that respondent’s

 commitment in this case might likewise form the basis for a future commitment,

 along with other obvious collateral legal consequence, convinces us that this appeal

 is not moot.”). Thus, Respondent’s appeal is properly before this Court.

 Issue

¶ 13 The sole issue on appeal is whether the trial court had competent evidence to

 support its Finding there was a reasonable possibility of Respondent suffering serious

 physical debilitation in the near future without treatment.

 Analysis

¶ 14 Respondent’s sole argument on appeal is that there was insufficient evidence

 to support the trial court’s Finding of dangerousness to self because Dr. Zarzar’s

 testimony regarding Respondent’s history of commitment, medication

 noncompliance, and placing himself in dangerous situations is based on hearsay, and

 therefore, incompetent evidence.
 IN RE A.D.

 2022-NCCOA-258

 Opinion of the Court

¶ 15 “To support an inpatient commitment order, the court shall find by clear,

 cogent, and convincing evidence that the respondent is mentally ill and dangerous to

 self . . .” N.C. Gen. Stat. § 122C-268(j) (2021). “Findings of mental illness and

 dangerousness to self are ultimate findings of fact.” In re B.S., 270 N.C. App. 414,

 417, 840 S.E.2d 308, 310 (2020) (citing In re Collins, 49 N.C. App. 243, 246, 271 S.E.2d

 72, 74 (1980)). On appeal, “[t]his Court reviews an involuntary commitment order to

 determine whether the ultimate findings of fact are supported by the trial court’s

 underlying findings of fact and whether those underlying findings, in turn, are

 supported by competent evidence.” B.S., 270 N.C. App. at 417, 840 S.E.2d at 310

 (citing In re W.R.D., 248 N.C. App. 512, 515, 790 S.E.2d 344, 347 (2016)). As such,

 the trial court must also record the facts that support its “ultimate findings[.]”

 Whatley, 224 N.C. App. at 271, 736 S.E.2d at 530.

¶ 16 Nevertheless, “[i]n order to preserve an issue for appellate review, a party must

 have presented to the trial court a timely request, objection, or motion and obtained

 a ruling upon the party’s request, objection, or motion.” N.C.R. App. P. 10 (b)(1).

 Indeed, when a respondent fails to raise an objection on hearsay grounds at the court

 below, “any objection has been waived, and the testimony must be considered

 competent evidence.” In re F.G.J., 200 N.C. App. 681, 693, 684 S.E.2d 745, 753-54

 (2009).
 IN RE A.D.

 2022-NCCOA-258

 Opinion of the Court

¶ 17 Here, Respondent does not argue the trial court failed to support its ultimate

 Finding but argues the trial court committed reversible error by relying on the alleged

 hearsay evidence in making its Findings of Fact. However, a review of the Record

 reveals Respondent did not object to the admission of Dr. Zarzar’s testimony on any

 basis, including impermissible hearsay. As such, Respondent failed to preserve this

 issue for appellate review, and the testimony must be considered competent evidence.

 See id.

¶ 18 Moreover, Dr. Zarzar testified as an expert witness. Rule 703 of the Rules of

 Evidence provides:

 The facts or data in the particular case upon which an expert
 bases an opinion or inference may be those perceived by or made
 known to him at or before the hearing. If of a type reasonably
 relied upon by experts in the particular field in forming opinions
 or inferences upon the subject, the facts or data need not be
 admissible in evidence.

 N.C. Gen. Stat. § 8C-1, R. 703 (2021). Indeed, our Supreme Court has held it is

 appropriate for a psychiatrist to base an expert opinion on both the psychiatrist’s

 personal examination of the patient and other information included in the patient’s

 official medical records. State v. De Gregory, 285 N.C. 122, 134, 203 S.E.2d 794, 802

 (1974).

¶ 19 Dr. Zarzar testified he learned of Respondent’s history of treatment non-

 compliance and prior hospitalizations from Respondent’s medical records, speaking
 IN RE A.D.

 2022-NCCOA-258

 Opinion of the Court

 with Respondent’s parents about his delusional behavior, and reviewing the police

 report from the 2010 incident when Respondent walked in the middle of the road.

 This kind of information is precisely the type that a medical expert may use as the

 basis for the expert’s opinion. See State v. Daniels, 337 N.C. 243, 269, 446 S.E.2d

 298, 314 (1994) (holding psychiatrist may properly base expert opinion on “(1) her

 review of the evaluations of other doctors who had interviewed defendant; (2) a

 personal discussion with a doctor in whose care defendant had been placed; and (3)

 interviews of defendant’s friends, employers, and family”), cert. denied, 513 U.S. 1135,

 130 L. Ed. 2d 895 (1995); De Gregory, 285 N.C. at 132, 203 S.E.2d at 801 (“[A]n expert

 witness has wide latitude in gathering information and may base his opinion on

 evidence not otherwise admissible.”). Thus, the rule against hearsay did not bar Dr.

 Zarzar from testifying about Respondent’s medical history and prior incidents of

 psychosis as he properly relied on this information in forming his expert opinion.

 Moreover, since Dr. Zarzar’s testimony was competent evidence, the trial court did

 not err in relying on this testimony in making its Findings of Fact.

 Conclusion

¶ 20 Accordingly, since Respondent did not object to Dr. Zarzar’s testimony on the

 basis of hearsay and Dr. Zarzar’s testimony was not inadmissible hearsay, we

 conclude the trial court based its Findings of Fact on competent evidence and affirm

 the Order.
 IN RE A.D.

 2022-NCCOA-258

 Opinion of the Court

AFFIRMED.

Judges WOOD and GORE concur.